IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ISAIAH A. GONZALEZ,<br><br>        Plaintiff,<br>  v.<br><br>GIBBS INTERNATIONAL, INC. dba GIBBS TRUCK CENTERS and MAXON INDUSTRIES, INC. dba MAXON LIFT CORP.,<br><br>        Defendants. | Case No.: 3:21-cv-01844-AN<br><br>OPINION AND ORDER |

        Plaintiff Isaiah Gonzalez brings this products liability claim against defendants Gibbs International, Inc. ("Gibbs") and Maxon Industries, Inc. ("Maxon") (collectively, "defendants"), alleging strict products liability and negligence. Defendant Gibbs filed this Motion for Summary Judgment, ECF [33], pursuant to Federal Rule of Civil Procedure 56(a). Defendant Maxon joined Gibbs' Motion for Summary Judgment. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons set forth below, Gibbs' motion is GRANTED in part, and DENIED in part.

## LEGAL STANDARD

        Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under this standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove there is an absence of evidence to support the non-moving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

Because plaintiff is the non-moving party, the following facts are presented in the light most favorable to plaintiff. Plaintiff was employed by a moving company, PDX Movers, owned by David Valencia ("Valencia") and Mike Devenport ("Devenport"). As part of his workplace training, plaintiff was instructed on how to operate, control, unfold, load, and unload a hydraulic liftgate. Decl. of Allen Eraut ("Eraut Decl."), ECF [34], Ex. 6 ¶¶ 38:2-7. In 2018, Gibbs sold PDX Movers a used 2014 Marathon Industries, Inc. Van Body ("van body"), which was fitted with a Tuk-A-Way Liftgate Series ("liftgate") that was manufactured by Maxon. Before completing the purchase, Valencia, who is an ASE certified technician, personally inspected the van body and liftgate. *Id.* Ex. 2 ¶¶ 15-16:13-9. Gibbs installed the van body on a truck already owned by PDX Movers. The van body was sold "as is" and without any warranties. *Id.* Ex. 3 ¶¶ 90:9-14; *id.* Ex. 4. On November 29, 2019, plaintiff was on a moving crew assigned to the truck. While unloading the truck, plaintiff used the control switch to lower the platform of the liftgate and reached over to unfold the platform once it was down. The liftgate jerked up and crush his left hand between the unfolded platform and the underside of the bed of the truck. Plaintiff incurred numerous injuries from having his hand crushed.

2

Valencia later examined the liftgate and determined that it had malfunctioned due to a bad "solenoid."[1] At the time of the incident, warning decals located in the middle of the liftgate stated, "KEEP HANDS & FEET CLEAR WHEN LIFTGATE IS IN USE" and included a reference to the operation manual. *Id.* Ex. 1. The operation manual included a warning "not [to] allow any part of your body to be placed . . . [i]n a position that would trap them between the platform and the floor of [the] truck body (or between platform and the ground) when [the] Liftgate is operating[.]" *Id.* Ex. 5. Further, the operation manual instructed that "[a] correctly installed Liftgate will operate smoothly and reasonably quiet" and that if "scraping, grating and binding noises" are heard, to "have the problem corrected before continuing to operate the Liftgate." *Id.* Plaintiff did not review the operation manual at any point during his work with PDX Movers; however, plaintiff used liftgates extensively in his work. *Id.* Ex. 6 ¶¶ 71:19-25, 73:6-12, 71:1-7.

While working at PDX Movers, plaintiff had observed the liftgate malfunction on multiple occasions. *Id.* ¶¶ 85-88:7-8, 92-93:21-12. When plaintiff observed the liftgate "going up and down when it shouldn't," being "jerky" and "erratic" in its movements, "stall and not move at all," and "make . . . grinding noises," he raised concerns with Devenport. *Id.* ¶¶ 85-86:11-25, 94-95:12-19. However, plaintiff did not know of, or observe, any work done on the truck related to the malfunction. *Id.* ¶¶ 93:13-20.

Plaintiff alleges that both Maxon and Gibbs are strictly liable and negligent because the liftgate's design was unreasonably dangerous by allowing the liftgate to malfunction upon the failure of a solenoid, and defendants failed to provide an adequate warning of its dangerousness.

Defendant Gibbs filed this Motion for Summary Judgment, arguing that it is not strictly liable or negligent under Oregon law. Defendant Maxon joined Gibbs' motion, arguing that it also is not strictly liable or negligent under Oregon law.

## DISCUSSION

---

[1] A solenoid is an electrical component within the liftgate that initiates the energy to start the electric motor that powers the liftgate.

Under Oregon law, a strict products liability action may be "brought against a manufacturer, distributor, seller or lessor of a product for damages . . . arising out of: (1) Any design, inspection, testing, manufacturing or other defect in a product; (2) Any failure to warn regarding a product; or (3) Any failure to properly instruct in the use of a product." Or. Rev. Stat. § 30.900(1)-(3). This statute "embraces all theories a plaintiff can claim in an action based on a product defect." *Kambury v. DaimlerChrysler Corp.*, 185 Or. App. 635, 639, 60 P.3d 1103 (2003). This includes claims based on theories of negligence, strict liability, breach of warranty and fraudulent misrepresentation. *Simonsen v. Ford Motor Co.*, 196 Or. App. 460, 466, 102 P.3d 710 (2004), *rev. den.*, 338 Or. 681, 115 P.3d 246 (2005).

**A.     Strict Liability**

    1.     *Defendant Gibbs*

Oregon's product liability statutes impose strict liability if "[t]he seller or lessor is engaged in the business of selling or leasing [an unreasonably dangerous product]." Or. Rev. Stat. § 30.920(1).

In *Tillman v. Vance Equipment Company*, a used equipment dealer sold a crane to the plaintiff's employer, who had asked the dealer to locate a crane for purchase. 286 Or. 747, 749, 596 P.2d 1299 (1979). After the employer inspected and approved the crane, the dealer purchased the crane and immediately resold it "as is" to the employer. *Id*. The plaintiff became injured while greasing the gears on the crane and alleged a claim of strict liability against the dealer, arguing that the crane was defectively designed and that the dealer failed to provide warnings as to its dangerous condition. *Id*. Based on these facts, the Oregon Supreme Court held that that "the sale of a used product, without more, may not be found to generate the kind of expectations of safety that the courts have held are justifiably created by the introduction of a new product into the stream of commerce." *Id*. at 755-56.

In making its decision, the court noted that "relevant policy considerations do not justify imposing strict liability for defective products on dealers in used goods, at least in the absence of some representation of quality beyond the sale itself or of a special position vis-a-vis the original manufacturer or others in the chain of original distribution." *Id*. at 757. Courts applying *Tillman* have subsequently found a used goods seller potentially strictly liable under Oregon law where the seller warrantied, serviced, and

4

installed the product. *See, e.g.*, *Allstate Indem. Co. v. Go Appliances, LLC*, No. 05-1595-AA, 2006 WL 2045860, at *2-3 (D. Or. July 19, 2006) (finding potential strict liability where seller warrantied, serviced, and installed new compressor on defective used refrigerator).

In the present case, Gibbs argues that plaintiff's strict liability claim fails as a matter of law. The Court agrees. Like the dealer in *Tillman*, Gibbs did no more than sell the used equipment. Gibbs did not design, manufacture, or create the liftgate's allegedly dangerous condition. Rather, Gibbs sold the liftgate "as is" and without warranty. Moreover, Gibbs does not typically sell liftgates as part of its business. Gibbs' only role in the sale was to bolt the used van body onto the PDX Movers' truck.

Plaintiff, however, argues that his strict liability claim is viable because Gibbs advertises the quality of their services as a truck distributor. Pl.'s Resp. in Opp. to Mot. for Summ. J. ("Pl.'s Resp."), ECF [35], at 6. First, plaintiff points to Gibbs' representation that "[Gibbs] is the biggest and best dealer network." *Id.* Second, plaintiff points to the "Service" section of Gibbs' website, which states that "[i]dentifying a potential problem at the onset can keep operational and maintenance costs down. [Gibbs] can help with custom maintenance to your specs or mobile maintenance at any location." *Id.* at 6-7. Plaintiff argues that because this statement is under the "Service" section, "a purchaser would assume [Gibbs] take[s] the same care with the used trucks they sell." *Id.* at 7.

Plaintiff's argument does not undermine the fact that the sale was "as is" and without warranty. The van body sale did not include a bargain for repairs and maintenance by Gibbs. Indeed, the purchaser, Valencia, testified in his deposition that the purchase agreement represented the sale as "as is, no warranty" and without systems coverage. Supp. Decl. of Allen Eraut, ECF [39], Ex. 3 ¶¶ 91:3-11. Further, if Valencia expected, or desired, an additional warranty or quality assurance, he would have bargained for it during the transaction, as he had done in past transactions with other companies. *Id.* In fact, when Valencia learned of the liftgate malfunctioning through plaintiff's accident, Valencia took steps to repair it himself; he did not request, or expect, that Gibbs would conduct the repairs. Eraut Decl., Ex. 3 ¶¶ 71-72:12-12.

As such, plaintiff has not demonstrated that any representation of safety existed beyond the

5

sale itself and Valencia's initial inspection. Accordingly, summary judgment on plaintiff's strict liability claim against Gibbs is GRANTED.

    2.    *Defendant Maxon*

Oregon Revised Statute ("ORS") § 30.920 imposes strict liability on a manufacturer for injuries caused by its product if the product is "both defective and unreasonably dangerous." *Purdy v. Deere & Co.*, 311 Or. App. 244, 247, *rev. den.*, 369 Or. 110, 500 P.3d 675 (2021). "Unreasonably dangerous defects in products come from two principal sources: (1) mismanufacture and (2) faulty design, including failure to warn *as a design defect*." *Harris v. Nw. Nat. Gas Co.*, 284 Or. 571, 576, 588 P.2d 18, 21 (1978) (emphasis added).

Under Oregon law:

> "the necessary elements of a design defect case are: (1) the sale or leasing of a product by one engaged in the business of selling or leasing such products; (2) a product that was expected to, and did, reach the user or consumer without substantial change in condition; (3) a product that, when sold, was in a defective condition unreasonably dangerous to the user or consumer; (4) injury to the user or consumer, or damage to his or her property; (5) that was caused by the product's defective condition."[2]

*McCathern v. Toyota Motor Corp.*, 332 Or. 59, 77 n.15, 23 P.3d 320 (2001).

    a.    Defective Condition

Through ORS § 30.920, Oregon codified the "consumer expectations" test for determining when a product is defective. *Id.* at 75. This test requires a plaintiff to "prove that, when the product left the defendant's hands, the product was defective and dangerous to an extent beyond that which the ordinary consumer would have expected." *Id.* at 79. Although the extent of a product's dangerousness is ordinarily a factual question to be determined by the jury, the Court must still "ensure that the evidence is sufficient for the jury to make an informed decision about what ordinary consumers expect." *Id.* at 77. Because ORS § 30.910 creates a rebuttable presumption that a product is not defective, "a plaintiff may not rely on the bare assertion of a defect from which a jury may infer unreasonable dangerousness; rather, a party must affirmatively put forth some evidence on the issue of dangerousness before the issue may properly be

---

[2] Defendant Maxon only addresses the first element. Therefore, the Court considers the other elements conceded.

submitted to a jury." *Russell v. Deere & Co.*, 186 Or. App. 78, 83, 61 P.3d 955 (2003).

Consumer expectations about how some products should perform under a particular set of circumstances may, in some cases, be within the realm of jurors' common experience. *McCathern*, 332 Or. at 78. In other cases, however, the products or circumstances involved may be such that the average person would not know what to expect. *Id.* "When a jury is unequipped, either by general background or by facts supplied in the record, to decide whether [a product] failed to perform as safely as an ordinary consumer would have expected . . . additional evidence about the ordinary consumer's expectation is necessary." *Id.* (internal quotation marks omitted) (alteration in original).

Here, Maxon argues that strict liability is especially limited on the sale of a used product and that plaintiff has introduced no evidence that the liftgate was unreasonably dangerous. Joinder in Def. Gibbs' Mot. for Summ. J. ("Def. Maxon's Joinder"), ECF [36], at 2.

To the contrary, plaintiff has provided evidence that the liftgate had an uncommon reaction to the solenoid malfunction. Plaintiff points to Valencia's deposition testimony where he states "[t]ypically [solenoids] don't go out like that. They just stop operationally . . . The lift stops working altogether versus going one way or the other." Supp. Decl. of J. Randolph Pickett, ECF [40], Ex. 2 ¶¶ 95:8-12. The inference, then, is that the ordinary consumer would expect a solenoid malfunction to result in a nonoperational liftgate rather than one that "jerks up." Plaintiff thus argues that the uncommon nature of the solenoid malfunction is evidence that the liftgate was unreasonably dangerous such that an ordinary consumer could not appreciate its dangerous. Pl.'s Mem. in Opp. to Def. Maxon Industries' Joinder ("Pl.'s Opp. to Joinder"), ECF [40], at 7.

Maxon has failed to dispute this argument. Further, Maxon has failed to provide the Court with any support for the proposition that strict liability on the sale of used goods is limited in the context of *a manufacturer*. Maxon cannot rely on Gibbs' strict liability argument, which, as discussed above, is premised on *Tillman*. *Tillman*'s holding, that sellers of used goods are generally not strictly liable for defects created by a manufacturer, is not applicable to Maxon. 286 Or. at 757.

Accordingly, plaintiff has provided sufficient evidence of a genuine issue of material fact,

7

and Maxon's motion for summary judgment on plaintiff's strict liability claim is DENIED.

**B.      Negligence**

      1.      *Failure to Warn*

Oregon has long recognized that product sellers have a duty to provide adequate warnings about nonobvious risks of injury associated with the use of their products when they know, or reasonably should know, of those risks of injury. *See, e.g.*, *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or. App. 444, 454-55, 61 P.3d 257 (2002), *rev. den.*, 335 Or. 479, 72 P.3d 76 (2003) (discussing cases). Oregon courts must reference the Restatement (Second) of Torts when assessing product liability claims brought under ORS § 30.920. Or. Rev. Stat. § 30.920(3) (aligning statutory analysis with Restatement). The Restatement notes that "[a] product is not in a defective condition where it is safe for normal handling and consumption." Restatement (Second) of Torts § 402A cmt. h (Am. L. Inst. 1965). However, injuries incurred from "abnormal handling" will not render a seller liable. *Id.* Notably, under the Restatement, a "seller" includes any person engaged in the business of selling products for use or consumption. *Id.* Thus, Oregon courts have applied it with equal force to both manufacturers and sellers.

      a.      Defendant Gibbs

Plaintiff argues that Gibbs should have provided a warning in addition to those provided by Maxon. Specifically, plaintiff alleges that Gibbs should have known that the liftgate had a defective solenoid that was going to fail a year after the sale and potentially injure a worker. Gibbs argues that this allegation is insufficient to show that Gibbs knew, or reasonably should have known, of the alleged defect.

In support of its argument, Gibbs relies on *Hoyt v. Vitek, Inc*. 134 Or. App. 271, 894 P.2d 1225 (1995). In *Hoyt*, the Oregon Court of Appeals considered whether defendant du Pont, the manufacturer and seller of Teflon used in a medical implant, was negligent for failing to warn about the danger of using Teflon as a material for a medical implant. *Id.* at 287. The plaintiff argued that du Pont knew or should have known that the product was unreasonably dangerous because du Pont knew of certain scientific studies, memorandums, and expert recommendations that had influenced du Pont to abandon a joint venture with the manufacturer of the medical implant. *Id.* at 287-88. The court found that the reports,

8

memorandums, and studies did not directly address the dangerousness of the plaintiff's medical implant because they discussed the use of pure Teflon in hip implants, whereas the implant used on the plaintiff had modified Teflon. *Id*. at 288. As result, the court held that the evidence presented by the plaintiff was insufficient to permit a reasonable factfinder to infer that du Pont knew or reasonably should have known of the implant's hazards and du Pont therefore had no duty to warn. *Id.* at 288-89.

Here, plaintiff provides no evidence that Gibbs had knowledge of, or should have known of, possible solenoid failures occurring on liftgates. Rather, plaintiff's only proffered evidence is that Gibbs "offered servicing on trucks" and "[had] mechanical services available," not that Gibbs *actually serviced* the liftgate or truck, or any other liftgate for that matter. Pl.'s Resp. 7. Indeed, Valencia, an ASE certified mechanic with a background in electrical systems, inspected the liftgate before purchasing it because the sale was "as is" and found that it was in good working order. Eraut Decl., Ex. 3 ¶¶ 43:18-23, 44-45:24-4. Valencia's background made him particularly qualified to determine the functionality of the solenoid because he had replaced five or six solenoids on other liftgates. *Id.* ¶¶ 95:5-18. Further, Valencia testified that, in his experience, liftgates usually stop functioning altogether when a solenoid fails; they do not begin moving unexpectedly, as the liftgate in this case did. *Id.* Given Valencia's experience and training, his inspection of the van body and liftgate seriously undermines plaintiff's assertion that Gibbs knew or should have known that the solenoid was defective at the time of the sale, or that it would later become defective.

Further, plaintiff presented no evidence that Gibbs knew of reports, studies, or other information about potential solenoid failures. Nor has plaintiff presented evidence that Gibbs was aware of any other injuries to its prior customers who had purchased van bodies or liftgates. Instead, the evidence shows that Valencia inspected the liftgate before purchasing it and found it to be in good working order and that the liftgate's eventual malfunction differed from other solenoid malfunctions. With the evidence presented, there is no genuine dispute that Gibbs should have known that the liftgate had a defective solenoid that would fail and potentially injure a worker over a year after the initial sale. Accordingly, plaintiff cannot establish a failure to warn claim against Gibbs through a "knew, or should have known,"

theory of liability and Gibb's motion on this claim is GRANTED.[3]

   b.  Defendant Maxon

Here, its apparent from the warnings with and on the liftgate that Maxon had anticipated danger from "abnormal handling" or a "particular use" of the liftgate. Indeed, the warning sticker reads "KEEP HANDS & FEET CLEAR WHEN THE LIFTGATE IS IN USE" and "SEE OPERATION MANUAL." Further, the operation manual states:

> "A correctly installed Liftgate will operate smoothly and reasonably quiet. The only noticeable noise, during Liftgate operation, is from the pump unit while the platform is raised. Listen for scraping, grating and binding noises and have the problem corrected before continuing to operate the Liftgate."

Pickett Decl., Ex. 9, at 3. Although the Court agrees that plaintiff has not put forth enough evidence to show that Maxon knew specifically of the liftgate's propensity for danger from a solenoid failure, plaintiff has presented evidence that Maxon knew of the liftgate's propensity to cause danger when it is making "scraping, gating and binding noises." Therefore, the remaining question is whether plaintiff has provided sufficient evidence that Maxon's warnings were inadequate.

A warning is adequate when it is "'in such form that it could reasonably be expected to catch the attention of the reasonably prudent [person] in the circumstances of its use'" and the content of the warning is "'of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person.'" *Anderson v. Klix Chem. Co.*, 256 Or. 199, 207, 472 P.2d 806 (1970) (quoting *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 85 (4th Cir. 1962)), *abrogated by Phillips v. Kimwood Mach. Co.*, 269 Or. 485, 525 P.2d 1033 (1974), *superseded by statute in McCathern*, 332 Or. 59. When a manufacturer opts to provide printed instructions regarding the proper usage of a product, the manufacturer "'assumes the responsibility of giving accurate and adequate

---

[3] Plaintiff's and Gibbs' discussion about the warnings that Maxon provided is unrelated to Gibbs' obligation except in relation to whether Maxon's warnings were adequate enough to negate the need for new or additional warnings. However, the need for new or additional warnings only arises if Gibbs knew or should have known of potential dangers. The Court finds that Gibbs did not know or should have known of dangers, and therefore declines to discuss those arguments.

information . . . including instructions as to the dangers involved in improper use.'" *Benjamin*, 185 Or. App. at 455 (quoting *Schmeiser v. Trus Joist Corp.*, 273 Or. 120, 132, 540 P.2d 998 (1975)). Thus, "when a warning is actually given, . . . the seller may reasonably assume that it will be read and heeded." *Schmeiser*, 273 Or. at 133.

Here, plaintiff argues that the existing warning label was vague, and ultimately failed to warn users of the liftgate's propensity for solenoid failures, which could result in similar injury. Specifically, plaintiff highlights the term "in use," arguing that because the power switch was not being manipulated, i.e., not being used to make the liftgate go up or down, plaintiff reasonably believed that the liftgate was not "in use" when he reached to unfold the platform. Further, plaintiff argues that the warning in the operational manual was an inadequate substitute because it failed to warn of the dangers of the liftgate. Regardless, plaintiff argues that the "adequacy of a warning is a question for the jury to answer." Pl.'s Opp. to Joinder 9; *see Lavoie v. Power Auto, Inc.*, 259 Or App. 90, 102, 312 P.3d 601 (2013) (noting that "the adequacy of a warning ordinarily is a jury question" (internal quotation marks omitted)).

According to the operation manual's operating instructions, the user must push the control switch down so that the liftgate is touching the ground. *See* Pickett Decl., Ex. 9, at 8. Then the user must unfold the platform manually. *Id.* Seemingly, the user has no way of turning off the liftgate prior to unfolding the platform. And if so, that is not clearly stated in the operation manual or existing warnings. As such, a user could reasonably assume that when the switch is not being manipulated, the liftgate was not "in use," and therefore it is safe for the user to place his hand on the liftgate to unfold the platform. Because a user *must manually unfold* the liftgate, a jury could find the warning "KEEP HANDS & FEET CLEAR WHEN THE LIFTGATE IS IN USE" inadequate.

Moreover, the operation manual's warning to listen for "scraping, grating and binding noises" could also be found inadequate. For example, a jury could find that "SEE OPERATION MANUAL" was not enough to catch the attention of a reasonable user. *See, e.g., Benjamin*, 185 Or. App. at 457 (finding that a jury could find the size, color, and placement of a warning insufficient to reasonably "'catch the attention' of a reasonable user) (citations omitted). Further, a jury could find that the warning

11

was inadequate because it was placed only in the warning manual, rather than on the liftgate. Finally, a reasonable juror could find that the existing warnings failed to warn of kinds of dangers that would result if the user did not heed use of the liftgate when "scraping, grating and binding" noises were present.[4] *See id.* (noting that a jury could find a warning inadequate even where it warned of a particular use because "it did not convey the 'consequences'" or "nature and extent of danger" of that use). Accordingly, plaintiff has presented sufficient evidence of a genuine issue of a material fact regarding his failure to warn claim against Maxon, and Maxon's motion is DENIED on this count.[5]

## CONCLUSION

Accordingly, defendant Gibbs' Motion for Summary Judgment, ECF [33], is GRANTED in part, and DENIED in part. All claims against Gibbs are DISMISSED with prejudice. Plaintiff's strict liability and negligence claims against defendant Maxon continue.

IT IS SO ORDERED.

DATED this 28th day of September, 2023.

Adrienne Nelson
United States District Judge

---

[4] Defendants also argue that plaintiff's failure to follow the existing warnings preclude his negligence claim. However, where a plaintiff presents sufficient evidence that the warnings provided are inadequate, the plaintiff's actions contrary to those warnings are immaterial because the plaintiff is not given "fair and adequate notice of the possible consequences of use or even misuse." *Benjamin*, 185 Or. App. at 455 (citing *Schmeiser*, 273 Or. at 132 (citation omitted)). In the failure to warn context, a manufacturer's instructions of proper use must give accurate and adequate information, including the dangers involved in *improper use*. *Id.* Thus, because plaintiff presented sufficient evidence that the existing warnings failed to address the consequences of improper use, defendants' arguments are immaterial.

[5] Maxon also argues that neither defendant is negligent because the liftgate is "not known to have malfunctioned in one and a half years since sale or the six years since manufacture." Def. Maxon's Joinder 2. This argument is not proper under a failure to warn theory as the failure to give an adequate warning creates a defective product. Because the Court cannot determine as a matter of law that the warning was adequate, its immaterial of when the liftgate malfunctioned. Finally, if Maxon wanted to make causation arguments, it should have done so in response to plaintiff's opposition to its joinder.