IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ISAIAH A. GONZALEZ,

        Plaintiff,

  v.

MAXON INDUSTRIES, INC. d/b/a MAXON LIFT CORP.,

        Defendant.

Case No.: 3:21-cv-01844-AN

OPINION AND ORDER

        Plaintiff Isaiah Gonzalez brings this products liability case against defendant Maxon Industries, Inc. ("Maxon"), alleging strict products liability and negligence. Maxon joined Trumpet Holdings Inc., doing business as Trombetta ("Trombetta"), as a third-party defendant, alleging cross claims for breach of contract and common law indemnity. Trombetta filed this Motion to Dismiss for Lack of Personal Jurisdiction, ECF [45]. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons set forth below, Trombetta's motion is GRANTED.

## LEGAL STANDARD

        A party may move to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Federal courts may only decide cases over which they have statutory jurisdiction and where the exercise of jurisdiction comports with due process. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). When subject matter jurisdiction is based on diversity, as in the present case, the district court applies the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). Oregon's long-arm statute permits this court to exercise personal jurisdiction within the limits of federal constitutional due process. Or. R. Civ. P. 4(L). Federal due process jurisprudence requires that a nonresident defendant have "certain minimum contacts" with the forum state

1

such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A defendant's motion may be evaluated by considering evidence presented in affidavits. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When the motion is assessed based on the pleadings and affidavits, rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). Although a plaintiff may not rest solely on the bare allegations of their complaint, without an evidentiary hearing, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the parties' affidavit statements are resolved in the plaintiff's favor. *Id.*

## BACKGROUND

Plaintiff alleges that a liftgate malfunctioned and caused him injury due to a defective contactor.[1] Notice of Removal, ECF [1], Ex. 1, ¶ 6. Maxon, a California corporation with a principal place of business in California, alleges that Trombetta, a Delaware Company with a principal place of business in Wisconsin, manufactured the defective contactor at issue in this case.[2] Maxon's Am. Answer, ECF [24], ¶¶ 1, 2, 14; Trombetta's Mot. to Dismiss ("Trombetta's Mot."), ECF [45], at 4.

The liftgate at issue, manufactured by Maxon, is a platform that raises and lowers between ground level and the bed of a moving truck via a hydraulic power unit. Trombetta's Mot., Ex. A, 10:8-20. Maxon designed the liftgate in California, using a hydraulic power unit purchased by MTE Hydraulics, which is headquartered in Rockford, Illinois. *Id.* 15:8-18. The platform and hydraulic power unit were

---

[1] Other parties to this litigation often refer to this product as a "solenoid."

[2] The Court acknowledges the evidentiary issues surrounding the disputed contactor; in specific, whether that contactor was, in fact, a Trombetta contactor. However, that issue is not relevant to the jurisdictional analysis before the Court. Accordingly, the Court declines to address those arguments.

assembled into a liftgate by Maxon's manufacturing division, FEMSA, in Tijuana, Mexico. *Id.* 19:14-20:6. According to Maxon, the liftgate at issue was manufactured in July of 2013. *Id.* 20:17-21. The assembled liftgate was then shipped from Mexico to California where records kept by Maxon indicate its first sale was to Marathon Truck Body in August of 2013, and that it was subsequently sold to the car and truck rental company, Enterprise. *Id.* 25:19-26:8.

The liftgate was attached to a van offered for rent by Enterprise. Maxon's Opp. to Trombetta's Mot. to Dismiss ("Maxon's Opp."), ECF [46], Ex. 1, 26:16-21. The next active user and/or owner of the liftgate was PDX Movers, an Oregon company, who purchased the liftgate and van body in California from Gibbs International, Inc. ("Gibbs")[3] in May of 2018. *Id.* 25:19-26:21; *id.* Ex. 2, 49:15-17; Trombetta's Mot. 3. Gibbs sold the liftgate and van body combination and installed it on PDX Mover's truck. Maxon's Opp. 3. Approximately a year and a half later, in November 2019, the incident giving rise to this litigation occurred. Notice of Removal, Ex. 1, ¶ 5.

## DISCUSSION

Personal jurisdiction may be established through general personal jurisdiction or specific personal jurisdiction. In the present case, the parties agree general personal jurisdiction does not apply. *See* Maxon's Opp. 5; Trombetta's Mot. 6-7. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). This means that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. 284 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). The analysis also must look at the defendant's contacts with the forum state, and not with persons who reside there. *Id.* at 285.

The Ninth Circuit applies a three-part test, commonly referred to as the minimum contacts test, to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate:

(1)    The non-resident defendant must purposefully direct his activities or consummate

---

[3] This Court dismissed Gibbs as a defendant on September 28, 2023. Op. & Order, ECF [48].

        some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)    the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff bears the burden of satisfying the first two prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If a plaintiff does that, the burden of satisfying the third prong then shifts to the defendant to present a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802).

    1.    *Purposeful Availment*

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (citations omitted). Maxon has alleged three causes of action against Trombetta: (1) breach of contract; (2) contractional indemnity; and (3) common law indemnity. Maxon's Am. Answer ¶¶ 18-29. As Maxon's claims sound in contract, the Court will rely on the purposeful availment analysis.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (quotation marks and citation omitted). In cases involving contractual obligations, the Supreme Court emphasizes "the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (quotation marks and citations omitted). The court's review of the contractual

relationship must be "practical and pragmatic." *Boschetto*, 539 F.3d at 1016. A court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether the defendant purposefully established minimum contacts within the forum. *Burger King*, 471 U.S. at 479.

An "individual's contract with an out-of-state party *alone*" cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478 (emphasis in original). Parties to an interstate contract who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (quotation marks and citation omitted). This continuing relationship must create a "substantial connection" between the defendant the forum state that is more than merely "random, fortuitous or attenuated." *Id*. at 479-80.

A defendant whose interstate contract contemplates "significant future consequences" in another state has the requisite continuing relationship with the parties to the contract in that state. *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (citations omitted). Similarly, a defendant who created continuing obligations to residents of another state has satisfied the "purposeful availment" requirement. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Conversely, a continuing relationship is not established by a "one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside, but otherwise created no substantial connection or ongoing obligations there." *Boschetto,* 539 F.3d at 1019 (citation omitted).

To establish the existence of specific personal jurisdiction, Maxon characterizes Trombetta as a "global manufacturer," that (1) designs and manufacturers its product for use in all fifty states; (2) widely sells contactors online; and (3) markets the product for use in all regions and states. Maxon's Opp. 9. However, Maxon provides no evidence that Trombetta's marketing, advertising, distribution, or sales relate to or target Oregon.

Instead, Maxon points to a website owned by Standard Motor Products, Inc. ("SMP")[4], which it alleges Trombetta is a subsidiary of. *Id.* at 4. Maxon alleges that the website states its products "support a wide range of global customers with an expanding range of diverse applications for the On-Highway truck, bus and specialty vehicle markets" and "perform in the harshest conditions across a broad range of markets and industries." *Id.* This website impliedly supports Maxon's claim that Trombetta globally markets and distributes its product which, in turn, subjects Trombetta to jurisdiction everywhere. There are two flaws with Maxon's argument. First, SMP's contacts with a forum are irrelevant to Trombetta's contacts with that forum. *See Transure, Inc. v. Marsh & McLennan, Inc.*, 766 1297, 1299 (9th Cir. 1985) (finding that "[t]he existence of a parent-subsidiary relationship is insufficient to establish personal jurisdiction over" one because of the other); *Uston v. Hilton Casinos, Inc.*, 564 F.2d 1218, 1219 (9th Cir. 1977) ("The fact that…parent corporation does business in [forum] cannot in itself render the subsidiary amendable to service of process and subject to in personam jurisdiction there."). Second, and more importantly, these general statements are insufficient to establish that Trombetta affirmatively targeted or targets its business at Oregon.

To the extent that Maxon's global manufacturer argument invokes a stream of commerce theory, that theory cannot establish personal jurisdiction. While the Ninth Circuit has not adopted the "stream of commerce" theory, it has found that "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). A plaintiff must allege additional conduct beyond merely placing a product in the stream of commerce. *Holland*, 485 F.3d at 459. This conduct may include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum Sate, or marketing the product through a distributor who has agreed to serve as a sales agent in the forum state." *Asahi*, 480 U.S. at 112. Because Maxon has failed to identify some

---

[4] Maxon incorrectly identified SMP as "SMP Engineered Solutions." Trombetta's Reply in Supp. of Mot. to Dismiss ("Trombetta's Reply"), ECF [47], at 3.

additional effort by Trombetta directed at Oregon, beyond the placement of the disputed contactors into the stream of commerce, Maxon cannot establish purposeful availment through the stream of commerce theory.

Finally, Maxon argues that its regular business relationship with Trombetta, and Trombetta's awareness that Maxon sold liftgates on vehicles to be used throughout the United States, including Oregon, evidences Trombetta's purposeful availment of itself to all jurisdictions in which Maxon sells, including Oregon. Maxon's Opp. 9. However, the relationship between Maxon and Trombetta is not sufficient to establish a substantial connection between Trombetta and Oregon. Indeed, "a defendant's relationship with a plaintiff or a third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286. Instead, the court must concentrate on the relationship between the defendant, the forum state, and the litigation. *Id.* at 284. Here, Maxon and Trombetta's relationship show transactions between a California company, Maxon, and a Wisconsin company, Trombetta, for a product manufactured in Wisconsin and shipped to California. That relationship is not enough to establish that Trombetta "purposefully availed" itself of Oregon. Accordingly, the Court finds that Maxon has not met its burden of showing that Trombetta "purposefully availed" itself of Oregon as a forum state.

Because the Court concludes that Maxon has not met its burden of establishing purposeful availment, the Court declines to address the rest of the specific personal jurisdiction prongs. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (holding that if any of the prongs are not satisfied, jurisdiction is improper).

## CONCLUSION

Accordingly, Trombetta's Motion to Dismiss for Lack of Personal Jurisdiction, ECF [45], is GRANTED.

IT IS SO ORDERED.

DATED this 1st day of March, 2024.

_____
Adrienne Nelson
United States District Judge